**SCHAFF et al. v. KENNEDY.**   (No. 9221.)

(Court of Civil Appeals of Texas. Ft. Worth.
Jan. 31, 1920. Rehearing Denied
Feb. 28, 1920.)

1. **Carriers ⚌192—Carrier may contract for conditioning of cotton at point other than that fixed in tariffs.**

Where the tariffs filed by a carrier for interstate transportation of cotton from Oklahoma to Galveston, Tex., fixed Wichita Falls as the only concentration point at which cotton might be stopped in transit for compression or conditioning, but further provided that if accident or other cause renders any compress unavailable the carrier reserves the right to use any other available compress, the carrier, where the compress at Wichita Falls was unable to take sand out of the cotton, might contract for conditioning of the cotton at Ft. Worth, where there was suitable machinery, the conditioning of the cotton being for the benefit of the carrier; and hence the carrier, having so contracted, cannot recover more than the regular rate to Galveston.

2. **Trial ⚌397(1) — Failure to enter finding on undisputed evidence not ground for reversal.**

Where the evidence is undisputed, the appellate court may declare its legal effect, and the fact that the trial court did not enter finding on the undisputed evidence is no ground for reversal.

Appeal from Montague County Court; W. T. Russell, Judge.

Action by R. Q. Kennedy against C. E. Schaff, receiver, and another. From judgment for plaintiff, defendants appeal. Affirmed.

C. C. Huff and J. M. Chambers, both of Dallas, and Paul Donald, of Bowie, for appellants.

Benson & Benson, of Bowie, for appellee.

CONNER, C. J. [1] In the briefest form in which we can present it, this case is one wherein the appellee, R. Q. Kennedy, sued for and recovered a judgment for $398 because of what may be termed an excessive freight charge on a shipment of cotton from Grandfield, Okl., to Galveston, Tex. There is no statement of facts, but the trial court found his conclusions of fact and law, and therefrom it appears that at the dates named in the petition the plaintiff was the owner and in possession of 209 bales of cotton, with which a large amount of sand was mingled. He desired to ship the cotton to Galveston. The tariff sheets filed with and approved by the Interstate Commerce Commission fixed Wichita Falls as the first and only concentration point at which cotton might be stopped in transit for compression and conditioning. But while there was a compress at Wichita Falls fully equipped for the purpose of compressing cotton it was not equipped with the necessary instrumentalities for taking the sand out of the cotton. The plaintiff and general freight agent of the appellant company thereupon entered into an agreement to the effect that the plaintiff might continue the transportation of his cotton to Ft. Worth, and there unload and condition it by having taken therefrom the sand, and again loading and forwarding it to its final destination, Galveston. The only equipment or available machinery that existed on the route between Grandfield and Galveston for taking sand out of cotton was at Ft. Worth. By the terms of the agreement, the plaintiff was to be so accorded the privilege of conditioning his cotton at Ft. Worth, and be charged only the through rate as fixed by the Interstate Commerce Commission tariffs from Grandfield to Galveston, which was 70 cents per hundredweight. The tariff rates from Grandfield to Ft. Worth and from Ft. Worth to Galveston on uncompressed cotton was $1.15 per hundredweight, and this latter freight rate was applied, and plaintiff was required to pay the same, contrary to his said agreement with the general freight agent. Had the through freight rate from Grandfield to Galveston, with stop-over privileges at Wichita Falls, been applied, the amount necessary for plaintiff to have paid was less than he in fact was required to pay in the sum for which he recovered a judgment.

The tariff sheets named but a single concentration point for cotton shipped between the points of origin and destination named in this suit. The court found that—

"No rate is provided or fixed by said tariffs for such cotton so originating and destined, with transit privileges at any other point except Wichita Falls, unless provided for by the rules and conditions shown in paragraph 9 hereof, copied from the tariffs."

Paragraph 9 is thereupon set out, but as a whole it is somewhat confusing, and we will not undertake here to set out the paragraph ad literatum. We think it will be sufficient to say that so far as we can understand it it provides in effect that the rates as specified in the tariff sheets must, in all instances, be charged, and that shipments originating, as the one in question did originate, must, as a general rule, be stopped if the shipper so desires only at concentration points named in the tariff sheet, which in the instance before us, as already stated, was Wichita Falls. If the provisions of the tariff sheets stopped here, it would follow without question, we think, that the freight as actually demanded of, and paid by, appellee was the proper amount. But among other things, the tariff sheets, embodied in the court's conclusions of facts, have the following:

"1. The object and purpose of these rules is to permit the movement of cotton and cotton

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

linters in bales to transit point for marketing, compression, storage, grading, conditioning, marking and reshipment under the conditions of these rules.

"2. If high water, accidents, breakdowns, damage, destruction by fire, receipts beyond capacity, or other cause, renders any compress unavailable for prompt service or inaccessible to the carrier such carrier reserves the right to use any other available compress without additional charge to the shipper."

Considering the object of the rules together with the exceptions or variations therefrom, as above quoted, we are of the opinion that the carrier had the right to permit appellee to interrupt the shipment of his cotton at Ft. Worth for the purpose of conditioning it, and to do so without additional charge. It is clear that had the cotton been shipped in its original form as delivered to the carrier at Grandfield, the proper rate by the tariff sheets would have been but 70 cents per hundredweight. The findings show that at Ft. Worth as much as 300 pounds of sand was found in one or more of the bales of cotton. It cannot be said to have been wholly without interest to the carrier, as well as to the shipper, to have the cotton properly conditioned. The rules as a whole evidently contemplated and provided for concentration, compressing, and conditioning points at which the cotton must be conditioned, unless in case of circumstances falling within a variation of the rules as provided for in the tariff sheets themselves. And this case, we think, falls within the exception.

The trial court's conclusions of fact and law will be adopted, and the judgment affirmed.

[2] We should, perhaps, further notice, however, appellants' contention that the court did not in his findings of fact declare that from the rules and section of the tariff sheets set out in his findings Ft. Worth, under the circumstances, might lawfully be designated by the carrier and shipper as a point for conditioning the cotton. But we think there cannot be any force given to this contention, for the reason that there is no dispute as to the terms of the provision or wording of paragraph 9 of the tariff sheets. The rule which requires a finding on the part of the trial court rests upon a showing that the evidence is conflicting; but where, as here, he finds the evidence, and the evidence is undisputed, then it is a mere question of its legal effect, and this court is not without power to declare it. The trial court in the case before us evidently did find, as we have, that under the circumstances it was not unlawful or variant from the rules and regulations in the tariff sheets to stop the cotton at Ft. Worth for conditioning; otherwise the judgment must necessarily have been for appellant.